JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                      :

            -v.-                               :

ARTHUR G. NADEL,                               :

            Defendant.                         :

- - - - - - - - - - - - - - - x

**09 CRIM 433**

INDICTMENT

09 Cr. ____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 2 8 2009

COUNTS ONE THROUGH SIX
(Securities Fraud)

The Grand Jury charges:

<u>Relevant Entities and Individuals</u>

1.    At certain times relevant to this Indictment, Scoop
Management, Inc., was a general partnership with its principal
place of business in Sarasota, Florida.

2.    At certain times relevant to this Indictment, Scoop
Capital LLC was a general partnership with its principal place of
business in Sarasota, Florida.

3.    At certain times relevant to this Indictment, Scoop
Capital LLC was the general partner of Victory IRA Fund Ltd.,
Scoop Real Estate LP, and Victory Fund Ltd.  Victory IRA Fund Ltd.
was a limited partnership with its principal place of business in
Sarasota, Florida.  Scoop Real Estate LP was a limited partnership
with its principal place of business in Sarasota, Florida.

Victory Fund Ltd. was a limited partnership with its principal place of business in Sarasota, Florida.

4.     At certain times relevant to this Indictment, Valhalla Management, Inc., was a general partnership with its principal place of business in Sarasota, Florida. Valhalla Management, Inc., was the general partner of Valhalla Investment Partners, which was a limited partnership, with its principal place of business in Sarasota, Florida.

5.     At certain times relevant to this Indictment, Viking Management LLC was a limited liability company with its principal place of business in Sarasota, Florida. Viking Management LLC was the general partner of Viking Fund, LLC, and Viking IRA Fund, LLC, which were limited partnerships formed on or about March 15, 2001, with their principal places of business in Sarasota, Florida.

6.     At all times relevant to this Indictment, ARTHUR G. NADEL, the defendant, was responsible for the purchases and sales of securities in the following investment funds: (a) Victory IRA Fund Ltd.; (b) Scoop Real Estate LP; (c) Victory Fund Ltd.; (d) Valhalla Investment Partners; (e) Viking Fund, LLC; and (f) Viking IRA Fund, LLC (collectively the "Funds"). NADEL also controlled, operated, and managed Scoop Management, Inc., and Scoop Capital LLC.

7.    From at least in or about 1999 through in or about
January 2009, ARTHUR G. NADEL, the defendant, purchased and sold
securities in the Funds through the New York, New York, office of
a brokerage firm ("Brokerage Firm").   At all times relevant to
this Indictment, NADEL executed trades based on an exchange traded
fund listed on the National Association of Securities Dealers
Automated Quotations ("NASDAQ") that was intended to track the
NASDAQ index.

<u>The Scheme to Defraud</u>

8.    From at least in or about 1999 through in or about
January 2009, ARTHUR G. NADEL, the defendant, perpetrated a scheme
to defraud the investors of the Funds by soliciting hundreds of
millions of dollars of funds under false pretenses, failing to
invest the money as promised, falsely claiming that his purchases
and sales of securities resulted in high rates of returns, and
misappropriating and converting investor funds for his own benefit
and the benefit of others without the knowledge and authorization
of investors.

9.    To execute the scheme, ARTHUR G. NADEL, the
defendant, solicited and caused others to solicit prospective
clients to invest their money in the Funds based upon, among other
things, his false statements that: (a) the investor funds would be
used to purchase and sell securities; (b) the performance of each
of the Funds was consistently positive; and (c) the net asset

3

value of each of the Funds was tens of millions of dollars.
Based, in part, on these misrepresentations from in or about 1999
through in or about January 2009, clients invested at least
approximately $360 million into the Funds.

10.   In truth and in fact, as ARTHUR G. NADEL, the
defendant, well knew, these representations were false.
Notwithstanding NADEL's statements to the contrary, and
notwithstanding false representations that NADEL made and caused
to be made on investor account statements and other documents sent
through the United States Postal Service (the "Postal Service") to
investors in the Funds throughout the operation of this scheme,
NADEL misappropriated investor funds and converted them for
personal use for NADEL, NADEL's family, and NADEL's businesses.
Moreover, notwithstanding NADEL's statements to investors and
others that each of the Funds had consistently positive rates of
return of between approximately 18 percent and 48 percent each
year, the performance of the Funds was not consistently positive
and the rates of return were substantially and materially less.

11.   From at least in or about 1999 through in or about
January 2009, ARTHUR G. NADEL, the defendant, also falsely
represented to investors that his purchases and sales of
securities in the Funds had generated cumulatively more than $271
million in gains.   In truth and in fact, as NADEL well knew,
during this period of time, NADEL's trading resulted in an overall

4

net loss in the Funds.  For example, in or about September 2008, NADEL caused documents to be sent to clients that stated that there was approximately $70,500,000 in total assets in the Valhalla Investment Partners LP, approximately $75,200,000 in total assets in Victory Fund Ltd., and approximately $65,300,000 in total assets in Viking Fund LLC.  In truth and in fact, in or about September 2008, Valhalla Investment Partners LP, Victory Fund Ltd., and Viking Fund LLC held only a small fraction of that money on behalf of its clients.

12.  ARTHUR G. NADEL, the defendant, accepted hundreds of millions of dollars of investor money, cumulatively, from individual investors, charitable organizations, trusts, and hedge funds that invested in the Funds.  From at least in or about 1999 through in or about January 2009, the Funds had over 350 investors.  From the outset of the scheme, and continuing throughout its operation, NADEL obtained investor funds through interstate wire transfers from financial institutions located in the Southern District of New York and elsewhere and through mailings delivered by the Postal Service.

13.  In connection with this scheme, ARTHUR G. NADEL, the defendant, created and caused to be created false and fraudulent documents including, but not limited to, client account statements that reflected fictitious positive returns consistent with the returns that had been promised to investors in the Funds.

14. To execute the scheme, ARTHUR G. NADEL, the defendant, represented and caused others to represent to investors that each of the Funds was operated and managed separately. In truth and in fact, as NADEL well knew, NADEL managed, purchased and sold securities within, and treated the Funds as, a single account regardless of the Fund in which clients had invested.

15. ARTHUR G. NADEL, the defendant, received a management fee of one percent of the net asset value of each of the Funds and a performance incentive fee of 12.5 percent of all of the profits, after subtraction of fees and expenses, earned from the investments in the Funds. From at least in or about 1999 up through and including at least in or about 2008, as a result of NADEL's false representations regarding the performance of each of the Funds and the net asset value in each of the Funds, NADEL fraudulently received tens of millions of dollars in management fees and performance incentive fees that did not reflect the actual performance, or the net asset values of, the Funds.

16. In addition to receiving a management fee and a performance incentive fee, ARTHUR G. NADEL, the defendant, transferred and caused to be transferred millions of dollars of investor money in the Funds to accounts and entities owned and/or controlled by NADEL. The investors in the Funds did not authorize NADEL to make these transfers, and NADEL failed to disclose the

transfer of these funds to accounts and entities that he owned and/or controlled to investors.

Statutory Allegation

17.   On or about the dates set forth below, in the Southern District of New York and elsewhere, ARTHUR G. NADEL, the defendant, unlawfully, willfully, and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in transactions, acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, NADEL made false and misleading statements that induced investors to invest their money in the Funds listed below:

| COUNT | APPROXIMATE DATES | FUND |
|-------|-------------------|------|
| ONE | From at least in or about 2003 through in or about January 2009 | Victory IRA Fund Ltd. |
| TWO | From at least in or about 2004 through in or about January 2009 | Scoop Real Estate LP |

| THREE | From at least in or about 2001 through in or about January 2009 | Victory Fund Ltd. |
|-------|--------------------------------------------------------------|-------------------|
| FOUR  | From at least in or about 1999 through in or about January 2009 | Valhalla Investment Partners |
| FIVE  | From at least in or about 2001 through in or about January 2009 | Viking Fund, LLC |
| SIX   | From at least in or about 2001 through in or about January 2009 | Viking IRA Fund, LLC |

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18, United States Code, Section 2.)

## COUNT SEVEN
(Mail Fraud)

The Grand Jury further charges:

18.  The allegations contained in paragraphs 1 through 16, above, are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

19.  From in or about 2002 through in or about December 2008, in the Southern District of New York and elsewhere, ARTHUR G. NADEL, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, did place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and

8

things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom such matters and things, and did knowingly cause to be delivered, by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, to wit, as part of a scheme to defraud the investors in the Funds, NADEL sent and caused to be sent and delivered via the Postal Service false and fraudulent account statements from the Funds to investors, some of whom were located in New York, New York.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNTS EIGHT THROUGH FIFTEEN
(Wire Fraud)

The Grand Jury further charges:

20.   The allegations contained in paragraphs 1 through 16, above, are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

21.   On or about the dates set forth below, in the Southern District of New York and elsewhere, ARTHUR G. NADEL, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire, radio, and television

9

communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, NADEL caused money to be transferred by wire from New York, New York, to bank accounts located outside New York for the purpose of executing the scheme to defraud the investors in the Funds, as set forth below:

| COUNT | APPROXIMATE DATES | DESCRIPTION OF TRANSFER |
|---|---|---|
| EIGHT | 03/25/08 | Wire transfer of approximately $200,000 from New York, New York, to a bank account in Florida |
| NINE | 04/02/08 | Wire transfer of approximately $100,000 from New York, New York, to a bank account in Florida |
| TEN | 06/24/08 | Wire transfer of approximately $400,000 from New York, New York, to a bank account in Florida |
| ELEVEN | 07/02/08 | Wire transfer of approximately $50,000 from New York, New York, to a bank account in Florida |
| TWELVE | 08/22/08 | Wire transfer of approximately $900,000 from New York, New York, to a bank account in Florida |
| THIRTEEN | 11/06/08 | Wire transfer of approximately $75,000 from New York, New York, to a bank account in Florida |
| FOURTEEN | 12/02/08 | Wire transfer of approximately $350,000 from New York, New York, to a bank account in Florida |
| FIFTEEN | 01/05/09 | Wire transfer of approximately $179,000 from New York, New York, to a bank account in Florida |

(Title 18, United States Code, Sections 1343 and 2.)

**FORFEITURE ALLEGATION**

22.   As a result of committing one or more of the
foregoing securities fraud offenses, in violation of Title 15,
United States Code, Sections 78j(b) and 78ff, Title 18, United
States Code, Section 371, and Title 17, Code of Federal
Regulations, Section 240.10b-5, as alleged in Counts One through
Six of this Indictment, and the mail fraud offense, in violation
of Title 18, United States Code, Section 1341, as alleged in Count
Seven of this Indictment, and the wire fraud offenses, in
violation of Title 18, United States Code, Section 1343, as
alleged in Counts Eight through Fifteen of this Indictment, ARTHUR
G. NADEL, the defendant, shall forfeit to the United States
pursuant to Title 18, United States Code, Section 981(a)(1)(C),
and Title 28, United States Code, Section 2461, all property, real
and personal, that constitutes or is derived from proceeds
traceable to the commission of the fraud offenses, including, but
not limited to, the following:

a.   At least approximately $360 million in United
States currency, in that such sum in aggregate is property
representing the amount of proceeds obtained as a result of the
charged securities fraud, mail fraud, and wire fraud offenses;

11

b.     Any and all funds on deposit in Account No. 2840109316 held in the name of Marguerite J. Nadel Revocable Trust at Northern Trust, N.A.;

c.     The real property and appurtenances known and described as 3966 Country View Drive, Sarasota, Florida;

d.     The real property and appurtenances known and described as 15576 Fruitville Road, Sarasota, Florida;

e.     The real property and appurtenances known and described 131 Garren Creek Road, Fairview, North Carolina;

f.     The real property and appurtenances known and described as approximately acres and forty-five lots in the name of Scoop Capital, LLC, in Thomasville, Georgia;

g.     The real property and appurtenances known and described as approximately thirty-seven acres in the name of Scoop Capital, LLC, in Grady County, Georgia;

h.     All right, title, and interest in the entity known and described as the Venice Jet Center located in Venice, Florida;

i.     All right, title, and interest in the entities known and described as Laurel Mountain Preserve, LLC, Laurel Preserve, LLC, and Laurel Mountain Preserve Homeowners Association, Inc., including, but not limited to, 420 acres in Buncombe County and McDowell County, North Carolina;

j.    All right, title, and interest in the entity known and described as Tradewind, LLC, including, but not limited to, five airplanes, one helicopter, and thirty-one airport hangars, located in Newnan-Coweta County Airport, Georgia; and

k.    All right, title, and interest in the entity known and described as the Guy-Nadel Foundation, Inc.

### Substitute Assets Provision

23.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable

property described above.

    (Title 15, United States Code, Sections 78j(b) and 78ff;
           Title 17, Code of Federal Regulations,
     Section 240.10b-5; Title 18, United States Code,
       Sections 981(a)(1)(C), 1341, and 1343;
      Title 21, United States Code, Section 853(p); and
        Title 28, United States Code, Section 2461.)

FOREPERSON

LEV L. DASSIN
Acting United States Attorney

14

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

ARTHUR G. NADEL,

**Defendant.**

### INDICTMENT

09 Cr. ____

(Title 15, United States Code,
Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations,
Sections 240.10b-5; and
Title 18, United States Code, Sections 2,
371, 1341, and 1343.)

LEV L. DASSIN
Acting United States Attorney.

**A TRUE BILL**

_____
Foreperson.